Good morning, your honors. We have a case in court. The counsel, Alex Young, for your appellate, Mr. Amundson. This case presents two assignments of error. There was an issue with the property remedy, but we've withdrawn that. We believe the issue goes straight for adjudication, plus one on which the district court did not rule. Which one is the one? What issue is wrong? There were two issues of remedies in the proceedings. They have requested immediate payment of benefits. We've withdrawn that. All right. You mean you're going to use the SUE to go back and still do the ALJ? That's correct. We believe the issue most right for adjudication is the ALJ's inclusion of skill level and the residual functional capacity. Skill level is – we believe it's infeasible because skill level does not usefully convey what the agreement is actually limited in. This was intended by the judge to address both mind-brain headaches and her mental health impairment threshold. And skill level just doesn't address that. In the Code of Federal Regulations, mental abilities assessed include the ability to understand, remember, and carry out instructions, and respond appropriately to supervision, co-workers, and court pressures. A broad limitation in terms of low self-worth just doesn't address those factors. Skill level is addressed in the Code of Federal Regulations, but not until 20 CFR 404-1565, all the way to Step 5, once it's determined a person can't do their past work. Then we look at skill level to see whether there are skills that can be transferred to other work. Counselor, in your opinion, where did the ALJ incorporate the skill level analysis that you are telling us is advantageous? Oh, the judge put it in his RFC assessment. He said that the claimant, based on migraines and limitations of depression, would be limited to, and I quote, low to high skills at work. It would have been appropriate had the judge reached Step 5 to look at skill level there. But this was a dentist's interpretation of several different doctors who had indicated various limitations generally converging around the limitation of simple routine tasks. How does the principle of unserved claim to this determination? In other words, later on, when you got to the skill Step 5, more or less, didn't the ALJ correct that in the sense that the assumptions for the job sort of indirectly addressed the RFC assessment, right? It's possible that on remand that might be the result, Your Honor, but we believe here we can't. We can't confirm that now. We can't confirm that now because the limitation that essentially all of the doctors that assessed mental health and faith was some version of simple routine tasks. This court in Sapna indicated that there was at least a apparent conflict between on one hand the limitation of simple routine tasks, and on the other hand, a job like the job that the plaintiff had as her past work at Step 4, was required to be at Level 3. So there is a potential conflict there, and the vocational expert was never given the opportunity to resolve. It's highly instructive to look at the agency's own interpretation of their rules, and this is, I realize that SSRs are not binding on this court, but they do reflect the agency's own interpretation. SSR 8241, when speaking about semi-skilled work, which is work with an SUV of 3 or 4, said the content of work activities in some semi-skilled jobs may be a little more than unskilled. Therefore, close attention must be paid to the actual complexities of the job in dealing with data people or objects, and the judgments required to do the work. In Sapna, this court said that reaching level is an appropriate metric to assess that, but what we're asking the court now to find is that skill level is not such an appropriate metric. Counsel, just so I understand your argument, do you disagree that the ALJ accounted for all of the claimant's mental and physical impairments in making its ROC determination? We do disagree with that. We feel that the only thing addressing the migraines or the conventional specification of skill level, which is just insufficient to explain what the plaintiff was or was not capable of doing. Okay, but would you agree that at least the ALJ articulated all of the mental and physical impairments that he was considering? Well, yes, we did articulate all of the impairments in step two. The question is whether the ROC adequately addressed these impairments. So we do feel that skill level does come into play at step five for the judge to reach step five. So skill level just had no place in the forecourt decision that's before you. All right. Perhaps we should hear from the government, and that would help us determine where the difference is between your arguments. Okay. I agree. Okay. We'll give our time to this person. Yes. Thank you. I'm going to place the court, counsel, Holmes Nelson on behalf of the Commission of Social Security. This court should affirm the decision of the administrative flaw judge and the commissioner in this matter. This decision is supported by substantial evidence and free from unjudicial legal error. Do you agree, though, that in his five-step analysis, the ALJ did not really make a correct ROC finding? No, I would disagree with that, Your Honor. The skill level, whether it's unskilled or semi-skilled, has a specific definition. And that definition includes, at the unskilled level, a restriction to simple work duties. And at the semi-skilled level, it is effectively simple duties plus. It's not complex duties, but it's more than just simple duties. So when the ALJ restricted the claimant to no semi-skilled work with the SPP of three, a specific vocational appropriation of three, the ALJ was, in fact, incorporating that definition of work that is simple but not complex, but not just simple. Something more. But doesn't the ALJ normally go into more of an explanation as to what the remaining functional limitations are before proceeding to determine what jobs can be performed? I mean, like ability to lift so many pounds, ability to work so many hours on a work day, ability to interact with the public. Generally, that's what we see when we look at the assessment of the residual functional capacities. Would you agree with that? I would, Your Honor. And the residual functional capacity, in this matter, includes a restriction to light work and other pastoral limitations. It's just the main point of Ms. Robinson's argument before this Court is that the mental impairments were not accounted for. Well, no, her argument is that skipping to say semi-skilled or the skilled level leaves out a step in terms of assessing the residual function of the claimant. It doesn't tell us exactly what the ALJ determined the disabilities were. That's how I understood her argument. Do you see her argument as being something different than that? No, Your Honor, but I think the argument as to using the term semi-skilled is only related to her mental impairments. The argument of whether she can do light work would be related to her challenge to Dr. Latham. So your understanding of opposing counsel's argument is that her disagreement with the ALJ's determination only relates to the mental capacity or the remaining mental abilities. Of her two issues, the second issue is just as you described. The ALJ in this, well. Let me ask you this. What does semi-skilled mean in terms of residual functional capacity? What does that mean to you? According to 20 CFR 404-1568, which defines unskilled work and semi-skilled, unskilled is restriction to simple duties, whereas semi-skilled work provides the ability to perform not only simple duties, but something more, but less than complex. How does that correlate to the mental impairments that were reflected in this claimant's history? How does that translate? Well, the ALJ had Dr. Cole who was able to translate those impairments. And Dr. Cole said she was able to sustain simple routine duties. And that, I would say, would be consistent with unskilled work. Had Dr. Cole just stopped there, then the ROC probably should have been simple routine duties. But Dr. Cole went further and said not only can she sustain simple and routine duties, but she has a mild impairment in simple multi-step tasks. Now the ALJ was, when Dr. Cole said this, the ALJ was presented with a problem because mild cannot easily translate into functional limitations in the residual function capacity assessment. The ALJ cannot present the term mild to the vocational expert. So the ALJ used the language provided by the vocational expert to describe the past relevant work to articulate what something beyond simple and routine but short of complex was. And the best term that the ALJ had accessible to him was semi-skilled work. Now it would be the position of the commissioner that that's enough. Semi-skilled has definition, and we can reasonably see that by looking at that definition, that the ALJ accounted for the ability to do simple duties and something more, something more short of complex. This is a step four case, a past relevant work case. And therefore, it's Ms. Hammond's bargain to show she cannot perform her past relevant work. And here she hasn't shown that Dr. Cole's opinion, if the residual functional capacity assessment should be reflected specifically as Dr. Cole described, the ability to sustain simple routine work plus the ability to do, with a mild limitation, simple multi-step tasks. She hasn't shown that that conflicts with the GED reasoning level of three. And she hasn't shown that that conflicts with the mental demands of her past relevant work. And that would be the countless error analysis that this court should perform, and she frankly hasn't made that showing here. The argument is two steps. One, she has to show error in assessing the residual capacity assessment. And two, she has to show that that error was consequential, that is, she couldn't perform her past relevant work. But your position is there was no error. That's correct. Your follow-back position that there was error and the error was harmless. That's correct, Your Honor. And DLJ, in interpreting Dr. Cole's opinion, that is consistent with Stubbs-Danielson, but in that case the LJ had to determine what is a moderate limitation in concentration, persistence, and pace. And again, moderate is not a useful vocational limitation, and therefore the LJ translated that in simple and routine cash. But at least it speaks in terms of the terminology that's normally used in terms of persistence and pace and the vernacular that's normally referred to when determining, you know, whether the past relevant work could be performed. This was very truncated in terms of interpreting the doctor's comments. Well, I would disagree with saying that it's truncated, because the LJ did ultimately use the exact language used by the vocational expert. And I would say in translating Dr. Cole's opinion, the LJ also benefited from knowing that the claimant exercised on a regular basis. And she was doing kickboxing. If you're going to a kickboxing class,  they are expected to follow. The LJ also noted that she was caring for her grandchildren, which obviously includes the ability to do something more than just strictly simple work, watching multiple grandchildren. And during the wealth of courage, she called herself a real estate investor. And the LJ had these additional facts that the LJ had to account for when interpreting Dr. Cole's opinion. And it's the position of the commissioner that the LJ reasonably did so here, because the LJ's interpretation and residual functional capacity assessment is consistent with the vocational testimony in this matter, that there is no error in this case. And because appellant hasn't shown any conflict between Dr. Cole's opinion as specifically articulated and her past relevant work, she can't show prejudicial error. And therefore, the commissioner would ask the board to refer her. Thank you. In terms of the conflict, we believe that Zappos actually gives us exactly the conflict that we would be looking for here. Dr. Cole's opinion was, indeed, that the appellant was limited to simple routine tasks that only allowed problems in each school. Multi-step tasks, that still confines her to, essentially, simple tasks. Dr. Paul Resnier for the state agency interpreted that to say that she was limited to short, simple routine assignments in her normal work day. What about the observation that she could take multi-task steps? What do you do with that language? I think the multi-step task is still consistent with reasoning level two, Your Honor. It's potentially not consistent with reasoning level three, which requires applying common sense understanding to carry out and stretch inspiration in oral or diagrammatic forms. The legal problems involving cerebral coronary variables differ from standardized situations. In your view, what specific finding should the ALJ have made that he did not make? Well, I believe that the medical opinion is converged around the limitation to simple routine tasks. That's not the only option for the judge. He could have literally used language from Dr. Cole, that she was capable of simple routine tasks and simple multi-step tasks. He could have presented that to the vocational expert. Had he done so, we might be left with the same ultimate outcome, but we would have at least a proper finding. So your basic disagreement is with the question that was posed to the vocational expert? Exactly right, Your Honor. Given that the judge presented the vocational expert and said, well, she can do most of my skilled work. Can she do her past work, which happens to be low semi-skilled, thus taking the discretion completely away from the vocational expert? The vocational expert wasn't presented with a question, can or can't do. He was told she could do work with the skill level and then asked if she could do work with that skill level. The answer is obviously yes. That's a leading question. Indeed, semi-skilled work involves some skills, and it does ring. The judge's RFC indicates that she can do the entire universe of SPT3 work, which is called the space universe. There are lots of skills involved in the various jobs that are SPT3. They may not be particularly involved. Obviously, they can sometimes be learned, but the RFC implies that people have already learned all of them. I would also submit that while there is some rough correlation between the complexity of the job and its skill level, that correlation is incidental and inconsistent. As we briefed, there are jobs within SAPF4 that are, nevertheless, reasonable level 2. There are also unskilled jobs within SAPF2 that are reasonable level 3. So there is some correlation, but it's not the only. There would also be a correlation between the complexity of a job and the rate that you would be paid for doing that job. It does not follow that a judge can say, I'm just going to give them a way to work. The question here, of course, is whether it's going to be her passport is not necessarily all work, because the judge found that she was capable of that in SAPF4. But, again, I would note that the vocational expert was presented with the answer to the question, rather than simply having him say yes or no. The RFC told him that he could, and he told what he thinks. So Dr. Cole said that the claimant was able to sustain simple, routine tasks with only mild problems, completing a simple multi-step task. You say that adding that last phrase doesn't change the fact that she was limited to simple, routine tasks. It might. It might not. I don't know. That was never presented to the vocational expert, and that's where I think the harm is here. Okay. I don't quite understand your argument. All right. Thank you, Your Honor. All right. Thank you both, counsel. This is argued in submittal before decision by the court. The next case I found before argument is United States v. Carter.
judges: Tashima, Gould, Rawlinson